Ruppert and Bandel *vs.* Mayor & C. C. of Baltimore.

(Decided May 30th, 1865.)

---

JOSEPH RUPPERT and LEONARD J. BANDEL, *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE.

BALTIMORE CITY—CONSTRUCTION OF ORDINANCES OF 1850, No. 40, AND 1855, No. 11, RELATING TO THE SINKING OF ARTESIAN WELLS.—The Ordinance of 1855, No. 11, providing for sinking Artesian wells in the city of Baltimore, on the application of sixteen owners of property in the immediate neighborhood, contains the following provision: "The petitioners to be responsible for all expenses that may occur in sinking said Artesian wells, if a failure should take place in the attempt to procure water." HELD:

That in case of a failure to procure water, the petitioners who have applied for the sinking of the Artesian well, are to be responsible for the expenses which may be incurred in the attempt to sink the 'said well, and not the Mayor and City Council of Baltimore.

Ruppert and Bandel *vs.* Mayor & C. C. of Baltimore.

APPEAL from the Superior Court of Baltimore city.

The action in this case was instituted to recover a sum of money alleged to be due to the appellants from the appellee, for digging an Artesian well in Baltimore city. The declaration contains a special count and the common counts, and to these the usual pleas were put in, denying the contract in said declaration. A trial was had, and the jury rendered a verdict in favor of the defendant.

At the trial of the cause, the appellants proved an application to the City Commissioner, from sundry owners of houses and lots in the neighborhood of the proposed well, asking that an Artesian well be sunk, and a pump erected, under the direction of the Commissioner, and agreeably to the ordinances of the Mayor and City Council. In conformity with said application, the City Commissioner advertised for sealed proposals for digging or sinking the well, and erecting a pump therein, "including a copper or composition cylinder, and that the contractor will be required to keep the pump in repair for one year after completion."

The appellants, under said advertisement, made the following proposal:

"BALTIMORE, July 4, 1855.

"*Joseph P. Shannon, Esq.*, City Commissioner:

"SIR:—We beg leave to offer this proposal for sinking an Artesian well, on Castle alley, near Pratt street, for the sum of $4.50 per foot, through sand, clay or gravel, and finish the same according to city requirements, and keep the same in repair for one year. Hoping that this may secure the work, we remain, &c.,    BANDEL & RUPPERT."

On the back of this was written—"The within proposal accepted.                    W. H. QUINCY, Clerk."

The appellants proceeded to dig the well, under the directions of the Assistant City Commissioner. They obtained water at two successive depths of digging, but not of a quality or quantity satisfactory to the Commissioner,

24    v.23.

and finally abandoned the same, but without being directed so to do by the Commissioner, or any party authorized to act on behalf of the Mayor and City Council.

The plaintiffs asked the Court to instruct the jury as follows:

1st. If the jury find from the evidence that the contract given in evidence was made by plaintiffs with the defendant, by its authorized agent, acting in its behalf, and shall find that in the digging, to perform said contract, the said plaintiffs penetrated at the point indicated by the agent of said defendant for such digging, if they shall find that any such point was so indicated, through all the sand, clay and gravel encountered in such digging; and shall further find that the further process of such digging was obstructed by rock, or other hard substance, not clay, sand or gravel, that then plaintiffs are entitled to recover.

2nd. If the jury find from the evidence that the contract given in evidence was made by plaintiffs with the defendant by its authorized agent, acting in its behalf, and shall find that the plaintiffs performed said contract, that then said plaintiffs are entitled to recover.

These prayers were rejected, and the Court granted the following, offered by the defendant:

1st. That under the Ordinance No. 40, of the Revised Ordinances of 1850, and Ordinance No. 11, approved 17th March 1855, the City Commissioner is authorized to sink an Artesian well, upon the terms and in the manner therein specified, and the contract which, by force of such ordinances, he is empowered to make, must be one authorized by the said ordinances, and if not, no responsibility can thereby be imposed on the Mayor and City Council of Baltimore.

2nd. That under the true construction of the said ordinances, the work contracted for must be paid for as therein mentioned and set forth; and that the Mayor and City Council of Baltimore became responsible for the payment of such work in the manner and to the extent declared in the

said ordinances; and that the payment therefor and the expenses thereof must be apportioned on all the assessable property that in the judgment of the City Commissioner is thereby benefited, and until such assessment shall have been made, there is no responsibility on the part of the Mayor and City Council; and that in case when there is a failure to procure a supply of water, the petitioners who have applied for the sinking of the Artesian well, are to be responsible for the expenses which may be incurred in the attempt to sink the said well, and not the Mayor and City Council of Baltimore.

The plaintiffs excepted to the refusal of the prayers offered by them, and to the granting of those of the defendant, and this constitutes the first bill of exceptions.

The defendant having offered in evidence the ordinances mentioned herein, then produced three of the signers to said application to testify to the non-fulfillment of the contract, who being excluded by the Court upon the objection of the plaintiffs, the defendant's counsel, to restore their competency, produced a release of their liability, accrued by reason of their so signing, executed by the Mayor of the city, George W. Brown, Esq., in the exercise of an assumed official power, and who had put the seal of the city thereto, without any special ordinance of the City Council enabling him so to do, but by and with the advice of the City Counsellor; the plaintiffs still objecting to their competency, and denying the power of the Mayor to execute any such release, the Court overruled the objection and admitted said witnesses to testify; to which the plaintiffs excepted, and this constitutes the second bill of exceptions.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran and Weisel, J.

*George H. Williams* and *Orville Horwitz*, for appellant:

The plaintiffs submit that the verdict should be reversed, for the following reasons :

1st. By Ordinance No. 40, of Revised Ordinances of 1850, it is enacted, that "Whenever the inhabitants of any neighborhood desire a well to be sunk, and sixteen or more persons, owners of houses and lots, and interested, shall make application to the City Commissioner in writing, describing the place," &c., "the said Commissioner, if in his judgment the said well and pump is required for the public good, shall forthwith cause the work to be done by contract," &c., after due notice for proposals.

In this case every provision of the above has been complied with—the application was in writing by seventeen of the requisite and proper parties, the Commissioner determined it for the public good, and entered into the contract in the mode prescribed, and the work has been done. Now why is the city not responsible? Because, according to defendant's second prayer, the defendant's officer, the City Commissioner, has not complied with certain mandatory regulations prescribed by the ordinance, and with which the contractor has nothing to do. Now the city is to be reimbursed for the outlay, and what remedies she reserves to herself to effect such reimbursement, is one thing, the responsibility to the contractor quite another. . This is not like the "paving and grading of streets regulated by Ordinance No. 15, in the same book; in those cases, sections 5 and 35 of the ordinance expressly stipulate, after creating a privity of contract between the property holders and the contractors, and reserving liens and remedies, "that in no case whatever shall the city be made responsible for the paving done," &c., and payment to contractors is only authorized after the tax is collected from the property; and the provisions of this ordinance are required to be incorporated into every contract made under it.

The ordinance under which this was done, not only does not contain any such provisions, but section 2 of it looks to the payment of the contractor when the work is done, without any reference to whether the tax imposed for it

shall have been received or not from the owners of the property benefited.

By Ordinance No. 11, approved March 17th, A. D. 1855, the provisions of the above ordinance as to wells, are made applicable to the construction of Artesian wells, with the proviso, that the sixteen signers shall be owners of property in the immediate neighborhood, and the further proviso, that the petitioners were to be liable "if a failure should take place in the attempt to procure water." Now if the city, at the instance of its property holders, engages in enterprises at their bidding, for the public good, who is, and ought to be responsible, but the party contracting? In grading and paving, the city refuses to be liable, and expressly incorporates the non-liability into the contract, but at the same time gives rights to the contractors, and not only provided the remedy by distress, by lien, &c., but section 9 of Ordinance No. 15, referred to, gives to the contractors the control over the bringing of suits, &c.

There are no such provisions in the ordinances relating to wells; when the jurisdictional facts exist, viz: the signing by a sufficient number of the proper persons, the judgment of the City Commissioner that the well is required, the advertised proposals, the accepted bid, and the work done, then it is submitted, the liability of the city is fixed; and whether the city officials thereafter perform the duties imposed upon them by the ordinance, is a matter over which the contractors have no control, and should have no concern; and as the city has not stipulated for its non-liability, and as the privity of the contract alone exists with it and plaintiffs, they, the plaintiffs, should have no difficulty in recovering the value of their services as measured by their contract, fully performed.

*John L. Thomas,* for appellee :

The appellee will rely upon the following points :

The Court below properly rejected the first and second prayers of the appellants, for the following reasons :

1st. Both of the prayers assume the fact of the contract having been made, and take the ascertainment of the fact away from the jury. They assume the existence of the contract, when it is the sole province of the jury to find it. *Brown vs. Ellicott,* 2 *Md. Rep.,* 75. *Gaither vs. Martin,* 3 *Md. Rep.,* 146. *Lewis vs. Kramer & Rahn,* 3 *Md. Rep.,* 265. *Okisko Co. vs. Matthews,* 3 *Md. Rep.,* 168. *Balto. & Susqua. R. R. Co. vs. Woodruff,* 4 *Md. Rep.,* 242. *Burtles vs. The State,* 4 *Md. Rep.,* 273. *Ellicott vs. Peterson,* 4 *Md. Rep.,* 476. *Balto & Ohio R. R. Co. vs. Resley,* 7 *Md. Rep.,* 297 *Canby vs. Frick,* 8 *Md. Rep.,* 163. *Haney vs. Marshall,* 9 *Md. Rep.,* 194. *Boyd vs. McCann,* 10 *Md. Rep.,* 118. *Cropper vs. Pittman,* 13 *Md. Rep.,* 190. *Denmead vs. Coburn,* 15 *Md. Rep.,* 29. *Maltby vs. North-western Va. R. R. Co.,* 16 *Md. Rep.,* 422.

2nd. Because they authorized the jury to believe that the contract given in evidence was such a contract, upon which, if the jury found the other facts mentioned in the prayers, the plaintiffs are entitled to recover. Whereas, the interpretation and the sufficiency of a contract, is a question of law, not for the jury, but the Court; and a prayer which submits this to a jury, is bad. *Emory & Gault vs. Owings,* 6 *Gill,* 199. *Balto. & Ohio R. R. Co. vs. Resley,* 7 *Md. Rep.,* 297. *Hatch vs. Pendergast,* 15 *Md. Rep.,* 251. *Osceola Tribe vs. Rosts' Admx.,* 15 *Md. Rep.,* 295. *Ewalt & Myers vs. Harding & Hopkins,* 16 *Md. Rep.,* 160. *Williams vs. Woods & Bridges,* 16 *Md. Rep.,* 220. *Whiteford vs. Munroe,* 17 *Md. Rep.,* 135.

3rd. Because the appellants' first prayer left the jury to infer, that "digging to the point indicated by the agent of the defendant," was a performance of the contract by the plaintiffs, which was a mixed question of law and fact, and was calculated to mislead the jury. *Long vs. Eackle,* 4 *Md. Rep.,* 454. *Handy & Tull vs. Johnson,* 5 *Md. Rep.,* 450. *Atwell vs. Miller & Mayhew,* 6 *Md. Rep.,* 10. *Clarke's Adm'r vs. Marriott's Admr.,* 9 *Gill,* 334. *Clements vs. Smith's Admr.,* 9 *Gill,* 160.

4th. The first prayer of the defendant was properly granted, because it contains a true exposition of the rights of the plaintiffs, in relation to the contract made with the City Commissioner. *Mayor & City Council, vs. Eschback*, 18 *Md. Rep.*, 276.

5th. The second prayer of the defendant was properly granted, because, by the terms of the first prayer, when the plaintiff made the contract with the City Commissioner, he was bound to know all the requirements of the ordinances of the city, and the extent of the authority of the City Commissioner, and the contract so made must be in compliance with the ordinances of the city, and by these, in case of a failure to procure a supply of water, those applying for the sinking of the well, and not the city, are the responsible parties, if any are liable. Ordinance No. 40, 1850. Ordinance No. 11, 1855.

6th. Because, by the terms of the contract, the work was to be done according to the city requirements, and the City Commissioner being the only proper party acting under the ordinances of the city to accept or reject the work, and the work not having been completed in accordance with the ordinances, the plaintiff had no right to recover. Ordinance No. 40, 1850, secs. 1, 2, 3. Ordinance No. 11, 1855. 2 *Story on Contracts*, secs. 975, 977.

7th. Because the contract made by the plaintiff and the City Commissioner, was not performed according to the terms thereof, and a substantial compliance even is not sufficient, and where the manner and the details are agreed upon, they are essential, and must be complied with. *Hill vs. School*, 17 *Me. Rep,,* 316. *Martin vs. Schoenberger*, 8 *Watts & Serg.*, 367. *Allen vs. Cooper*, 22 *Me. Rep.*, 133.

8th. Because by Ordinance No. 40, of 1850, it is on the application of sixteen or more persons to the City Commissioner, that he can cause a contract to be made for the sinking of a well or pump, and this can only be done in accordance with the terms of said ordinance, which are :

1st. To award the contract for the work to the lowest responsible bidder.

2nd. When the work is completed, and not before, to apportion the expenses on all the assessable property benefited by the erection of the pump or well.

3rd. To collect said assessments by the aid of the City Collector, and, when collected, to pay the same over to the contractor, when the work is completed.

9th. The release, for the purpose of restoring the competency of the witnesses, Hunt, Harley and Maxwell, was properly considered as sufficient, because the same was given by the executive head of the city, in the exercise of his official power, and with the advice of the legal adviser of the city, and needed no special ordinance of the city to enable him to do it. 3 *Phillips on Ev.*, 122, *Note* 663. *Seymour's Admr., vs. Beach,* 4 *Ver.,* 493. 3 *Md. Rep.,* 305. 1 *Yeates,* 28. 4 *Md. Rep.,* 231. 7 *Md. Rep.,* 582. 5 *Md. Rep.,* 152.

BARTOL, J., delivered the opinion of the majority of the Court:

The decision of this case depends upon the true construction of Ordinances 1850, No. 40, and 1855, No. 11. The former relates to ordinary wells and pumps, and the latter to Artesian wells. They are to be construed together; the provisions of Ordinance No. 40, of 1850, being expressly made "applicable to the construction of Artesian wells as fully as to ordinary wells and pumps."

This ordinance, (1850, No. 40,) after prescribing the preliminary steps to be taken to authorize the City Commissioner to contract for having a well or pump made, directs that *when it is completed,* "he shall apportion the expense on all the assessable property that, in his judgment, is benefited by the erection of said pump or well;" and then goes on to provide for the collection of the amount so assessed, and for the payment of the contractors during the work. No provision is made in this ordinance for the case of a failure to obtain water fit for use; probably such a contingency was considered too remote to be provided against; if

it should happen, however, while it is very clear no assessment could be made by the commissioner under the ordinance, because in such case no property would be benefited thereby, we see no reason why the city would not be responsible to the contractor for the work done, unless there should be something in the terms of the contract to exempt it from liability. The same principle would apply where the contract is for an Artesian well, if it were not for the terms of the Ordinance of 1855, No. 11, by which the case of a failure is expressly provided for, in these words: "The petitioners to be responsible for all expenses that may occur in sinking said Artesian wells, if a failure should take place in the attempt to procure water."

Upon the true construction of this clause, the whole case turns; here there was a failure to procure water, and the work was abandoned.

The appellants contend that the city is liable to them for the work done, and that the responsibility fixed upon the petitioners is to the city. If so, in what manner is the city to enforce that responsibility? Not, certainly, by an assessment upon their property, to be made by the Commissioner; he has no authority to make such assessment, except for benefits resulting from the completion of the well; besides, by the terms of the ordinance, the responsibility of the petitioners is a personal responsibility, not one imposed upon their property, to be enforced by assessment, and collected as a tax; there is no power to make such assessment under the ordinance.

If, then, the city be liable to the contractors for the work, the effect would be to compel the city first to pay the expenses, and then to collect the money by a suit against the petitioners. This, in our opinion, is not the meaning of the ordinance. When it declares that the petitioners shall be responsible, this is equivalent to saying that the city shall not be responsible. In passing it, the Mayor and City Council seemed to have considered that, unlike sinking an ordinary well, the attempt to construct an Artesian well

was an enterprise attended with great risk and uncertainty; this risk they were unwilling to assume, and put it upon the petitioners, the persons at whose instance the work is undertaken, and, in case of failure, make them responsible for all expenses that may occur.

When the well is completed, that is, when success has been achieved, the expense is to be apportioned and assessed by the City Commissioner on the property benefited, and collected as a tax thereon; but if a failure take place in the attempt to procure water, the petitioners are responsible, not to the city, but directly to the contractors. They sign the petition with the knowledge of the risk and responsibility so cast upon them; the privity between them and the contractors is created by the words of the ordinance, for every contract made by the City Commissioner under the Ordinance of 1855, must be construed as if this clause were inserted in it.

It follows, from these views, that in our opinion there was no error in the ruling of the Superior Court upon the prayers, and that the judgment ought to be affirmed. It is unnecessary to express any opinion upon the construction of the contract sued on; assuming that it was fully performed on the part of the appellants, without meaning, however, so to decide, still, according to our construction of the ordinances, this action could not be maintained; and for the same reason it is immaterial to decide the second bill of exceptions; even if there was error in admitting the evidence objected to, it would not be ground for reversal.

GOLDSBOROUGH and WEISEL, J., dissented, and filed the following opinion, delivered by WEISEL, J.::

We are constrained to differ from our brothers, a majority of the Court, who have pronounced the judgment in this cause.

It seems to us proper that the contract sued on should be examined, in order to ascertain whether its terms were complied with by the appellants. For if all that was re-

quired of them to be done, was not performed, they had no right of action against the Mayor and City Council of Baltimore, or against the signers of the petition, according to the construction of the ordinances arrived at by a majority of the Court.

The contract is contained in the terms of proposal by which the work of sinking the Artesian well was bid for by the appellants, and accepted on the part of the city. It was to sink the well "for the sum of $4.50 per foot, *through sand, clay or gravel*, and finish the same according to city requirements, and keep the same in repair for one year."

As the parties stipulated for a certain sum per foot, through sand, clay or gravel, it cannot fairly be presumed that if hard rock were to be encountered, the appellants were to persevere in penetrating it, and continuing the operation until water should be obtained, or the work be pronounced fruitless in the effort. We should give to the contract a reasonable construction, looking to the nature and character of the work, and the intention of the parties; and we think that the stipulation in this case was to bore for water through sand, clay or gravel; and in case in the course of such boring water were obtained to answer the public purpose contemplated by the ordinance, then they were to finish the well in such way "as the city should require, or had required, and to keep the same in repair for one year." When, therefore, the contractors reached hard rock, they were not required to go further, but that event determined the fact of failure in the attempt to procure water.

We turn now to the ordinances of the city of Baltimore, under which this contract was made, and is sought to be enforced. They are the Ordinances of 1850, No. 40, and 1855, No. 11; the latter being a supplement to the former. That of 1850, relates to the sinking of ordinary wells and erecting pumps. The supplement makes *the provisions of the former ordinance applicable to the construction of Artesian*

*wells as fully as to ordinary wells and pumps,* concluding, however, with a clause or provision which creates the principal difficulty in ascertaining the meaning and intention of the law-giver as applicable to this controversy. Reading the main ordinance and its supplement together, as applicable to the construction of Artesian wells in the city of Baltimore, we find these provisions, viz: "That whenever at least sixteen signers, owners of property in the immediate neighborhood, and interested, desire an Artesian well to be sunk in their neighborhood, shall make application to the City Commissioner, in writing, describing the place where the well is required, the Commissioner, *if in his judgment the same is required for the public good,* shall forthwith cause the work to be done by contract to the lowest responsible bidder, after a certain notice, and when completed, shall apportion the expense on all the assessable property that, in his judgment, is benefited by the construction of said well, and shall make or cause to be made a correct list of the *persons who are liable* to pay the said apportionment, and the amount *to be paid by each person,* provided that (in the case of ordinary wells) he shall not *assess any person* having a private pump in good order, more than half the cost for which said *person would otherwise have been liable.* He is then directed to deliver to the City Collector a duplicate of said list, with directions for collecting the same; and which the Collector shall collect *by distress or otherwise,* giving thirty days' notice previous to any. distress, and pay over the amount to the Register of the city." Sec. 1, No. 40, of 1850, and No. 11, 1855, 1st clause. The 2nd and 3rd sections of the Ordinance of 1850 then provide: "That whenever the work is completed, and the City Commissioner shall have made the assessment and returned the same to the Collector, it shall be lawful for the Register, upon the order of the City Commissioner, by and with the approbation of the Mayor, to pay to the person or persons employed to do the work and furnish the materials for the well or pump, the amount of his or their

respective bills. It is also made the duty of the City Collector, immediately upon receiving from the City Commissioner any assessment made for sinking the well, to furnish *each of the persons assessed with a bill of his, her or their proportion of the expense assessed as aforesaid;* and if the *person or persons so charged* shall not pay the same within sixty days after the bills, as aforesaid, have been delivered, it shall be the duty of the Collector forthwith to proceed to *enforce payment according to law;"* (that is, by distress or *otherwise,* as provided in section 1.) Then the supplement adds this clause: "The petitioners to be responsible for all expenses that may occur in sinking said Artesian wells, if a failure should take place in the attempt to procure water."

We thus present the provisions of these ordinances in connection, and in the manner they are read by us, in order that we may be able to give a proper and practical construction to the concluding clause above quoted from the supplemental ordinance, for upon that depends the proper ruling of the Court upon the exception to the defendant's second prayer.

The majority of the Court have concluded that when a failure takes place in the attempt to procure water, the petitioners are directly responsible to the contractors for the expenses incurred, and not the city; and that the ordinances create a privity between them, by virtue of the language above used.

In this we do not concur with our brothers. These wells are to be sunk for the public good, and only when so required in the judgment of the City Commissioner; but they are to be paid "for by all the persons in the neighborhood whose property is, in his judgment, benefited by the improvement when completed, or by the petitioners only in case of a failure to procure water. The assessment upon the property, which the Commissioner is to make, is not for the purpose of fixing upon each lot or portion of property benefited a certain sum, which is to be recovered in a

Ruppert and Bandel *vs.* Mayor & C. C. of Baltimore.

proceeding *in rem.* It is for the purpose of ascertaining how much *each person is liable to pay.* It is to apportion among the property-holders the expenses, according to the value of each one's property. And, therefore, the assessment *of the property* and *of the person* is indiscriminately used in the ordinance, and the liability of the person to pay the apportionment, is more than once expressed. *Each* person is charged with the assessment, and the Collector is required to collect it by *distress* or *otherwise;* by a personal action, if he sees proper. The assessment is not made a lien upon the property by express terms, though the right of distress is given, if the Collector prefers that mode of proceeding to enforce the payment. Is there any thing, then, in the clause, which confines the responsibility for the expenses, in a case of failure to procure water, to the petitioners, instead of all the property-holders in the neighborhood, that would dispense with a similar assessment as to them, and change the remedy to the contractors? We think not. The petitioners must be owners of property in one case as well as in the other. The object is the public good. In the one case, a benefit is conferred upon all the property in the neighborhood, and the expenses of the improvement are apportioned among all the property-holders benefited, by the proper officer; and a mode pointed out for their collection from each one liable to the payment—each one his appropriate sum, and no more. So in the other case, the expenses of the work done, being a loss, or resulting in no benefit, are to be apportioned among the petitioners; and all the provisions for so apportioning and collecting them, are as applicable in this case as in the other. Otherwise there would be no mode for ascertaining each one's share of the cost, and a joint action against all, if practicable where there are numerous signers, and in the varying circumstances that might attend the projectors of such an enterprise, might result in fixing the entire cost upon a few or even one, besides embarrassing the contractors in their efforts to be remunerated for their labor and

outlays on a work in its very nature difficult and costly. A literal interpretation of this clause would produce these consequences, and would render the ordinance for the construction of Artesian wells almost impracticable. It can scarcely be supposed that any one would risk his labor and capital upon a public work of this character, when, in case of failure to procure water, he was not to look to the contracting party for payment, but to numerous individuals, at whose instance a public corporation engaged his services. In doubtful cases the consequences may be considered in the construction of a statute, and it is the office of the expositor to put such a sense upon its words as is agreeable to equity and right reason, so that no innocent person shall receive any damage by a literal construction. *Dwarris on Statutes*, (9 *L. L.*,) 755, 756. The construction we give to this clause, gives a ready remedy to the contractors against the city with which they contract, whilst the city, in its turn, is provided with the same means of reimbursement against those for whom the expenses were incurred, in the one case that it has in the other; and, indeed, the more readily, for where a failure takes place, the apportionment is to be made among an ascertained number, the petitioners, all property-holders; whilst in the other, the City Commissioner is to exercise his judgment as to who are benefited by the improvement, and to apportion the expenses among them.

This construction is strengthened by the fact that the payment to the contractor is not dependent upon the actual collections of the apportioned sums from the parties liable. To collect these by distress, would require full ninety days, (secs. 1 and 3,) and yet the city is authorized to pay as soon as the apportionment is made and returned to the Collector, (sec. 2.) And further, by comparing the provisions of these ordinances with those of the paving ordinance, (1850, No. 15,) in which, although there are similar provisions for assessing, levying and collecting from the owners the paving tax, it is specially provided that the said tax shall be a lien

upon the property, and that the city shall *in no case what-
ever be made responsible for the paving done, and that a
clause to that effect shall be inserted in all contracts to pave,*
(sec. 5.)   No such provision, denying the city's responsi-
bility, is found in the ordinances respecting wells and
pumps.   To give to the clause in Ordinance 1855, No. 11,
the force and effect of such a provision, would be, in our
opinion, to impart to it a meaning far beyond what its lan-
guage and context would justify.

Looking, then, to the intention of the maker of these or-
dinances, to be discovered from the text and context, the
occasion and subject matter, of the law, and particularly the
remedial nature of the clause in question, (which justifies a
liberal construction, in order to avoid consequences that
would work injury to, or inflict loss upon, a contracting par-
ty,) we think the construction we have given to these ordi-
nances is the one most consistent with their language and
purpose.

The second prayer of the defendant also asserts that, un-
til the assessment shall have been made, there is no respon-
sibility on the part of the Mayor and City Council.   The
2nd section of the Ordinance of 1850, does provide that
upon the return of the assessment by the City Commissioner
to the Collector, it shall be lawful for the Register, upon
the order of the Commissioner and with the approbation of
the Mayor, to pay the contractor.   This would be full evi-
dence of the completion of the work to the satisfaction of
the city authorities, and no reason could then exist for
longer delaying payment.   But the responsibility of the
city to the contractor is not affected by the failure of the
city officials to perform their duty in a case in which the
work is fairly completed, or all that the contractor had en-
gaged to do, shall have been done; but in case of their re-
fusal to perform their duty in the premises, the city is liable
to be sued for the violation of its contract in the appropri-
ate form of action.

We deem it unnecessary, in this aspect of the case, to present our views upon the rulings of the Court below on the other exceptions.

In conformity with the views expressed in the opinion of the majority of the Court, the judgment was affirmed.

*Judgment affirmed.*

